May it please the Court again, David Bradford on behalf of Manufactured Home Communities. This case is here on an order of the District Court that contains no reasons for its dismissal on grounds of jurisdiction or on grounds of failure to state a claim. The only apparent jurisdictional argument was a standing argument that should be reviewed de novo by this Court. Contrary to the County's arguments both in the District Court and here, there is no rule that taking claims are limited to title holders. To the contrary, as the Supreme Court has held in United States v. Petty Motors, which involved a lessee, and Pinel v. City of San Jose, which involved associations of parties with interests in lands, taking claims may be brought by those who suffer a pecuniary injury as a result of the regulation of property. The County relies on cases that were decided prior to Palo Zallo and concerned parties who owned property after the taking had occurred. MHC has alleged injury. Its pleadings are to be construed with all inferences drawn in its favor on a motion to dismiss. It has further submitted an affidavit from Ms. Kelleher, who is here in court today as their General Counsel, that it is the equitable owner of the property. It reports the income from the property as a public company. Additionally, MHC was the party that the defendant sued in the administrative proceeding, and certainly the appropriate party to bring claims derived from those proceedings. And in the event of a... I don't have a... I don't... I think you're standing... The only area that I have a question on your standing issue has to do with your facial takings claim. And that is a claim that... I mean, basically, a facial takings claim is a claim that the mere enactment of a statute constitutes a taking. And this particular statute was enacted in, what, 1984? Yes. And then you became the owners much later. And directing your attention to Carson Harbor v. City of Carson, a Ninth Circuit case, that in that case, because Carson Harbor did not own the property when the statutes were enacted, and when the alleged facial takings occurred, it had incurred no injury entitling it to assert the facial claim. And that case seems to be problematic for you on that particular claim. Yes, Your Honor. Carson Harbor was decided before the U.S. Supreme Court decision in 1984. And the majority opinion, who acquires title subsequent to the time that the law is enacted, may state a taking claim. But a facial takings claim is not one? That's the question as to whether Palazzolo extends to both facial and as-applied claims. The dissent in Palazzolo characterized the claim in that case as involving both as-applied and facial claims. The majority opinion does refer to it as an as-applied claim. But there's nothing in the majority opinion that links its reasoning to the fact that it was an as-applied claim. And if we focus for a moment on a facial claim... So then your argument basically is that Palazzolo is your authority over... Carson Harbor. ...that I shouldn't stop at Carson Harbor. That's correct. Even though Carson Harbor would be a death knell to you. It would be, Your Honor. But Palazzolo, and that's why I say all their cases predate Palazzolo. And Palazzolo dealt with this issue. It's a factor that you can consider in a Penn Central analysis. Because one of the issues in a Penn Central analysis is what's the impact of the regulation on the park? What is the diminishment of expectations of investors and so forth? Well, the other thing is, though, because you bought this subsequent, you bought the property with the ordinance had been in effect for how long? Exactly. So how can, you know, you knew that when you bought the property. Right. And so how can you take something away that you already knew you didn't have? Right. And that's the exact issue that Palazzolo wrestled with. And it said that were we to hold that subsequent purchases of property could not challenge unreasonable regulations or laws that were not enacted on their watch, we would put a time stamp on the takings clause. And that's something we refused to do. I'm paraphrasing the language of Palazzolo. But if a law affects an unreasonable restraint on the use of property under Penn Central, which is an ad hoc balancing standard that looks at many things, not just the severity of the impact on the property owner, but it also looks at is there a nexus to a public purpose? What used to be the substantially advanced standard as a standalone claim is now one factor under the Palazzolo analysis. Another is, is this property owner singled out to bear a burden that injustice and fairness should be borne by the community and taxpayers as a whole? So as one factor in a Penn Central claim, even if the court were to determine that acquiring the property at a later date diminished the economic impact from a facial claim, that is not in any way fatal to a Penn Central claim because there are other factors that also need to be evaluated and looked at in the mix. All right. That clarifies my question. Now, we still have these time issues, rightness and the statute of limitations. Is there any showing that there was an effort to seek compensation through the state mechanisms here? Your Honor, we contend that the state mechanisms on compensation are futile for two reasons. And in this case, unlike those others that have dealt with the Kavanaugh issue, such as the Ventura and Hacienda case, we have made a showing by way of affidavit that, in fact, pursuit of compensation in this case is futile. We did that in the form of the affidavit from Mr. Rodriguez. Futility is generally viewed as an issue of fact. And here there are disputed facts. There's two reasons for it. One is, in Palazzolo and in United States v. Petty Motors, the Supreme Court made very clear that if you have a taking, the measure of compensation is the fair market value of the property. It is not a fair rate of return as you would have with a monopoly or a regulated industry. And Kavanaugh only provides you a fair rate of return. So it does not provide an adequate remedy for a Federal taking. And, in fact, the whole ---- Well, does that require us to make some sort of a judgment on the validity of Kavanaugh? I think that there should be a hearing on the viability of Kavanaugh, that there is a factual question. And part of that is this, that Kavanaugh imposes the remedy in the way of a rent increase on the existing tenants. If, in fact, the park owner is entitled to market rent because there's a taking, and he's entitled both to past lost market rent and market rent going forward because the law is unconstitutional, you cannot get more than market rent on a going forward basis from the existing residents. The most anybody will ever pay to live in property is whatever the market is. So how can you charge the market going forward and, on top of that, get an increase over the market to make up for your past lost rent? And so we believe that economists and others will show that it is impossible for a Kavanaugh remedy to work for a Federal constitutional taking claim. Additionally, Mr. Rodriguez catalogs each and every catalog request that was made, at least at the time of his affidavit in California, to show that courts will not grant the stays of these ordinances, which is a precondition to the Kavanaugh remedy being viable. Do you have a record reference to the Rodriguez affidavit? I don't, but I'd be glad to supply it to the Court. Maybe I don't know if the Council can find that. But it is in the excerpts of the record that we submitted. And he does go through and identifies the reasons why the Kavanaugh remedy is a futile remedy, and that raises factual issues as to the futility of seeking compensation in these circumstances. Certainly. That's something for the sake of discussion, at least, if that takes care of the ripeness issue. What about the statute of limitations, the one-year statute? Certainly, Your Honor. And if I just might briefly unripen this. The substantive due process claim and the private takings claim should not require seeking of just compensation because those are claims that go to the validity of the ordinance. That is, those are claims that, as the Court recognized in Lingle, if an ordinance is so irrational or does not confer a public benefit such that it is invalid as an enactment, the remedy is that the law is invalid, and no amount of compensation can justify that law. Just as that was the case with the substantially advanced standard, the Court has now said, if you can show a law violates substantive due process because it's invalid, then in that circumstance, compensation is not your remedy. It's invalidation of the law. So compensation need not be sought with respect to those two claims. With respect to the limitation issue that Your Honor inquired about, to the extent that these are as-applied claims, they ripen upon the enforcement of the law. In connection with the application of a mobile home rent control law, that law is applied continuously. Each year, the county says, we're now applying the law to tell you you can only raise your rent by 60 percent of whatever the CPI increase is. Well, how could the statute ever run? As to an as-applied claim, it could not. And I don't think any court has ever held that an as-applied challenge to a mobile home rent control law was barred by the statute of limitations. Courts have held that facial claims were barred, but I don't believe that there's a case out there that bars an as-applied claim because the law is continuously applied. Now, you may be limited in your damages to the last two years. Are you making both an as-applied and a facial? Both an as-applied. So I think our only issue — Both facial and as-applied. Both facial and as-applied. As to the facial, you're conceding that the one-year statute cannot be met, given the facts of this case. Here's where we think that Palazzolo creates a question for this Court. I would acknowledge that the precedents of this Court prior to Palazzolo would bar the facial claim on statute of limitations. And that statute, I believe, is now two years, but was one year at this time. In light of Palazzolo, where the Court said we should not put a timestamp on taking claims, we believe that that gives this Court cause to reconsider whether its prior precedents are still viable in light of Palazzolo on the limitation issue. Palazzolo really dealt with the ripeness issue, but again, its reasoning, particularly in the context of Penn Central, we believe is equally applicable to a facial claim. And that is, these are claims which cannot be known fully at the time of enactment, because a Penn Central taking claim, again, depends upon was this company singled out? That's a function of what other efforts were made to promote affordable housing at the cost of the taxpayers. What's the disparity between the market rent and the rent permitted under the ordinance? That's something that evolves over time. What are the expectations of investors? And most significantly, is there, under the Yee case, which is still good law, and you'll recall that Yee asked the question, is there a relationship between these premium transferring kind of ordinances and a public purpose, and suggested that there likely was not, that these laws don't make housing any more affordable, that that's also a factor under Penn Central. So because Penn Central is a multiplicity of factors, many of which can't be known at the time of enactment, it would be unfair to bar a claim, be it facial or as applied, based upon the facts known as of the time of enactment. Those circumstances constantly change and evolve, and what may be a Penn Central claim today may not be one tomorrow or the day before. And for that reason, we don't believe that there is a time stamp on such a Penn Central claim. It's significant that Palazzolo concerned a Penn Central claim and recognized that those ad hoc factors need to be evaluated on a continuous basis. I did want to save a few minutes for rebuttal here, but I do want to note that, in light of Lingle, there is, we believe the appropriate course should be for this court to remand, for the district court to consider in the first instance, the taking claims that have now been validated by the court in Lingle. Whatever procedural defenses there are or are not to those claims should best be addressed by the district court on remand. Lingle specifically upheld the viability of a Penn Central claim in this context. It specifically revalidated the decision in Yee, where the Supreme Court said that the fact that these regulations don't make housing any more affordable, they just pass the cost on to the next generation of tenants, is relevant to whether it constitutes a regulatory taking and whether there's a nexus between the law and a legitimate public purpose. That is one of the factors under Penn Central and one of the factors that makes this a compelling Penn Central claim. Another is that these property owners have been uniquely singled out to bear all the burden of promoting affordable housing, which is a burden that, in fairness, should be borne by the taxpayers as a whole. Third, the severity of the burden. Here we have an ordinance that does not even permit a CPI adjustment. It's only 60% of the CPI, and because that compounds, the rents permitted under this ordinance will grow exponentially more disparate from what the market itself, which has been growing at rates like 20%. The gap between the market rent, as shown in the record, and the rents permitted here are very substantial, and all of those state in excellent Penn Central claim. Additionally, the court in Lingo made clear that, unlike the decisions of this court in Graham and Armendaris, a substantive due process claim is not coextensive with a taking claim. In fact, you need to decide the substantive due process claim before you can get to the taking claim, because a substantive due process claim deals with the validity of the regulation. If the regulation is invalid because it doesn't promote a public purpose, or it's so irrational, in the words of the court, as to violate substantive due process, that's the end of the inquiry. The government can't take the property because it violates due process to do that, and all the compensation in the world won't allow it to do so. So the Supreme Court held that the substantive due process standard and claim is logically distinct from and prior to a taking claim. Until that decision, you could not bring a substantive due process claim in the circumstances of this case, because in Graham and Armendaris, this court held that you're precluded from bringing such a claim if you have a taking claim. The substantive due process claim came into existence for the first time based on the decision in Lingo, and that's also relevant to the statute of limitations. We could not have pursued that claim any sooner than Lingo. We did plead it and said that if Graham or Armendaris is ever overruled, we should be permitted to have an subsilentio in Lingo, where it held that this claim was distinct from and prior to. Also note that Lingo and Kelo gave new life to the substantive due process standard, that while in Lavalde and earlier cases this Court held these regulations don't violate substantive due process, the Court made clear that there must be teeth to this substantive due process inquiry, and, in fact, that a regulation that transfers premiums and that confers a benefit on a discrete group of private individuals may, in fact, be so irrational to violate the substantive due process clause, and that's a paraphrase from Lingo. But that is a tougher due process standard than the one that this Court evaluated in Lavalde or Carson Harbor, where the issue was simply whether a rational legislator could have believed that there was some logical nexus here. I'd be glad to answer questions, and otherwise I'd like to reserve time for rebuttal. Thank you, Your Honor. We'll hear from the County. Good morning. May it please the Court. Henry Heeter, appearing on behalf of the County, and joining me at Council table is Tethy McMulthy, Deputy County Counsel. I'd like to begin by structuring my presentation in a way which discusses the takings and constitutional claims first, and then talks, secondly, about the writ claim. And what I'd first like to talk about is the nature of the claim that's made in the first-minute complaint. And I believe that the nature of the claim is necessarily a facial attack on the ordinance. The reason is, is that... Exclusively as opposed to one of two? Exclusively, Your Honor. Let me explain. This part was purchased in 1997 by a separate legal entity that's associated with the MHC, and the ordinance had been in effect since 1984 at that point. These one-year leases existed, had existed under the prior owner, and were considered subject to the ordinance, and treated as subject to the ordinance, and were treated as subject to the ordinance by this park owner until 2002, approximately, for five years. At which point, MHC took the position that these spaces shouldn't be subject to the ordinance, and noticed a rent increase of approximately 185%. Now, this wasn't a notice of rent increase under the ordinance. This wasn't an application to the rent board saying, we want to raise rents in this park under the ordinance 185%. This was a contention that the ordinance actually on its face did not apply to these nine spaces. We're talking about only nine spaces out of, I believe it's 124, something like that. So, the dispute that is the genesis, and the sole factual dispute that drives all these legal theories, is simply that the ordinance on its face, on its face, does not apply to the leases at these nine spaces. That's not a factual dispute, is it? That's an interpretation. You look at the ordinance, and you look at the leases, and you say that these leases, are they exempt from the ordinance, or are they not? What was the board's interpretation on this? The board interpreted that the leases were, in fact, not one-year leases except from the ordinance, because of the practice by the parties, the representation by the manager that they were subject to the ordinance, and the fact that even though the title of the lease is one-year lease, there's a provision in the lease which allowed the rent to be raised every month. Well, I thought it said 90 days. We have to give 90 days notice under the mobile home residency law. One of the hallmarks of a one-year lease is that your rent can only be increased once a year. And so, the board thought that there was, the way the parties treated the language of the lease, the provision which allowed the rent to be increased more than one year, made the leases fall within a less-than-one-year lease. Wow, okay. I understand the argument of how it had been, you know, that sort of equitable argument of that's how it's been treated, but isn't it just, what does the language say? That's true. The language seems to say one year. The title seems to say one year. You can call, I mean, that's one thing. Well, I don't know. How do we get the month-to-month out of that language? Because if the hallmark of a one-year lease is that you can only raise rents once per year, if in fact within the body of the lease you can raise the rents more than once per year by just giving a notice every 90 days, then you don't really have a one-year lease. You have, in effect, a month-to-month lease. There's no difference between that and a month-to-month lease. That was the board's finding. But coming back to the claim that's being made here, again, it's necessarily a facial claim. There is no particular application of the ordinance that's being challenged here. There was no, they didn't come to the board and say, we need a rent increase because we think our property is being taken by the ordinance. They didn't say that. They just said on its face the ordinance doesn't apply to these spaces. And I was looking through the administrative record, and there's a letter by Mr. Rodriguez, counsel below for the MHC, that appears in the excerpts of record at 250. I think the relative language is at 251. But at 251, his letter, which is dated March 29th, it's a letter to, I believe, the board. The penultimate paragraph says, it begins, since the language of the ordinance seems to be clear on its face, MHC believes the notice is to be lawful. In other words, its own counsel understood that what it was making was a claim that on its face the ordinance did not apply to these leases. And so I think that there is no as-applied claim here. The claim is a facial one. And if the claim is a facial one, let's set aside the issue of standing. I don't think Palazzolo overrules Carson Harbor because the dissent isn't the key. The majority opinion in Palazzolo treats it as an as-applied claim and treats it as a situation where a landowner had to take certain steps to write what I believe was an as-applied claim. But let's assume even further that what we had with Palazzolo was some sort of springing facial claim that every new buyer of property could bring a new challenge to an ordinance that preexisted its ownership of the property. That's a novel position which would cause a lot of problems for certainty in terms of the way public entities operate in ordinances. But the problem that MHC faces in this case, of course, is that it bought the property in 1997. The ordinance said what it said in 1997. It said the same thing in 2002. The leases are the same. Nothing happened. No application of the ordinance with respect to these nine spaces occurred between 1997. Well, now, this question was raised in the colloquy with Mr. Bradford. What's your response to his analysis of that point? My response is that let's assume Mr. Bradford is correct. I guess it would take an en banc panel to overrule Carson Harbor. I don't know procedurally what that would mean. But let's say that Palazzolo says that a new owner can facially challenge an ordinance that preexisted his ownership. It seems to me that you still have a statute of limitations. You've got to act timely as the new owner. They buy the property in 1997. The ordinance is in place. It's been in place since 1984. They know it. It's applying to these leases. They know it. It's in their park. They know the language of these leases. They present it to the residents and have them sign. For five years, they sit on this facial claim, and they don't make a facial claim at all. And then all of a sudden, 2002, they say, well, lo and behold, we have a facial claim with respect to these nine leases. It's incredible. The light went on. Pardon? The light went on. Well, yeah, maybe. I mean, there's a lot of stale claims that people have that are meritorious, maybe that they'd like to, you know, resurrect. But statute of limitations actually do provide a useful purpose in our society. And then there's still a question of standing under Carson Harbor. And the Carson Harbor rationale was the reason you don't have a facial claim is that you haven't been harmed. If there was a taking, it was a taking of the original owner's property, not yours, and that you adjusted your purchase price, and that, therefore, if you invalidate the ordinance, all you get is a windfall. You're not getting compensation. But, again, even if you try to get past the standing issue in Carson Harbor, the real issue is they bought the property in 1997. If they had a facial claim, they still had that one-year statute of limitations from 1997, expired a long time ago. Absolutely nothing happened under that ordinance in terms of an application for those nine spaces that hasn't been happening continuously for 10 to 15 years. So that's the issue on facial. I contend that the takings claim necessarily is a facial claim, and it's necessarily time-barred, if not barred also by standing. Your contention is there's no as-applied claim here at all. No, Your Honor, because there's no particular application of the ordinance. They haven't tried to get a rent increase under the ordinance. That's how you get an as-applied claim under a rent control ordinance. All right. I mean, every ordinance, when it's first applied, when it's first enacted, obviously applies in the sense that it regulates what it purports to regulate on its face. And that applies to the equal protection claim, too, in this case. They're claiming that they were singled out to provide affordable housing and that that's improper and somehow a takings claim. If you look at the ordinance, they weren't singled out to provide affordable housing. The ordinance singled out mobile home park owners as a class to regulate because of the ability of mobile home park owners. They're not being a competitive market for rents. They had the ability to charge rents that were far in excess. They could charge in a competitive market. It wasn't a competitive market. That's the purpose of all rate regulation. That's why we have utility regulation. So. You are arguing that this is a monopoly? No. No, I'm arguing that there are elements of, that the courts have recognized, that there are elements of mobile home ownership. It's like an apartment. Not like an apartment. You can't just move out if you can't pay the rent. You've got a home. You can't move the home. There's no vacancies. There's no place to put the home. If there are parks that won't accept older homes, you're trapped. So. I've got a question with respect to the. So, equal protection is necessarily a facial challenge. I'm sorry, Your Honor. I've got a question with respect to the status of the pending state litigation, but I don't need to get into it. And if you want to finish your argument on your point, why don't you do that and then answer my question as to where that whole state issue is, where it lies right now. I can tell the court. I won't do it. The trial court has entered judgment in favor of the county, and an appeal has been taken by MHC. There's no briefing schedule yet, but the notice of appeal has been filed within the last month and a half, I'd say. Are those. What is your position with respect to the relevance of what's going on in the state proceedings? I was going to reach that when I talked about the WIP petition. That's fine. I just want to be sure we cover that point. My answer to that would be younger abstention. It's where I'm going to go. But, again, looking at the equal protection claim, if you look at it, they're saying, well, they're singling out mobile home park owners to regulate. Yes, the ordinance does do that. Is that a facial claim? Yeah, it's a classification that appears on the face of the ordinance. And if you want to challenge that as an irrational classification, you have a right to do that, but it's a one-year time ticker, and that one's gone too. Let's talk about the final claim, and that's a substantive due process claim. Again, that's a claim, and I disagree with the reading or interpretation of Lingle that Mr. Bradford talked about. Lingle, number one, did not approve the dicta in ye. It distanced itself from the dicta in ye. In fact, it did kind of a mea culpa. It ate crawl because it had repeated the same dicta in other cases. And finally, in the way that only Supreme Court justices get to do with their opinion, said, well, we weren't wrong when we said that. It's just that we didn't mean it. I don't think they approved the dicta in ye. I think they said it was probably just dicta, and it was unfortunate. It did not create a substantive due process claim of heightened scrutiny. It said, in fact, under substantive due process, you're supposed to defer to the legislature. It's a rational relationship issue. Lavalde did permit a substantive due process claim that was separate from a takings claim. It was a claim that was identical to the claim that's brought in this case. Lavalde rejected the claim because it said that rent control is rationally related to a legitimate government purpose, even if it creates a premium, even if it benefits future existing residents in terms of their home values. It serves the rational or legitimate government purpose of regulating rents, and it goes on. So Lavalde clearly here holds that there is no valid substantive due process claim here. And if there were, again, that's a facial claim. A claim that an ordinance is not rationally related to a legitimate government purpose is a facial claim. You look at the face of the ordinance, you look at the evils that it purports to address, you look at the operative provisions, and you decide whether or not the ordinance is reasonably calculated to achieve legitimate government purposes. It's a very deferential standard. It's a hard one to meet. But in any event, it's a facial claim, again, has to be brought within one year. So it's the county's position that all the constitutional claims in this case are necessarily facial claims, that if they're not barred by lack of standing because MHC didn't own the park when the ordinance was enacted, they're certainly barred by the expiration of the statute of limitations after they bought the park in 1997, or its other entity bought the park. And these are ways for the court to decide these issues without reaching, I think, a different issue, which I don't want to spend time on, which is whether or not MHC has standing on an as-applied vacancy claim if it doesn't hold title. That leaves the issue is, if there is an as-applied claim, is it right? Again, I don't think there are any as-applied claims, but if there are, number one, the issue of whether the California procedural remedies for a takings claim are adequate is an issue of law. It's not a factual issue. Mr. Rodriguez can have his own personal opinion. I'm not an unbiased one, obviously, being an advocate in this case. But this court has consistently held, contrary to Mr. Rodriguez's opinion, that Kavanaugh and the procedure set up under Kavanaugh for remedies for takings are adequate. And simply, this is a request that this court overrule the string of cases that we cited in our brief on the adequacy of that remedy based on the opinion of Mr. Rodriguez. I don't think that holds water here. So if they do have an as-applied claim, I don't think they do, then it's unright under Williamson. And they do have a remedy. And that remedy has been pursued in state court. Not involuntarily, because they did file it. They said it was protected, but I didn't see how filing the same claim in state and federal court is protecting the statute of limitations. I didn't file that at all. But anyhow, it was done. Let's talk finally about the red issue. Has anyone ever wanted Kavanaugh's claim? Yes. Other sites? Unfortunately, or fortunately for my clients, they've been unpublished. But yes. Are they searchable? Can we find it? You know, Your Honor, I haven't come prepared to answer that question. I don't know. Is this a San Diego County Superior Court case? What is this? I think there's one, I'm pretty sure, out of Escondido. I'm sorry, I just can't say for sure. But I do know where it's gone back down and they've had to implement. Is it a court of appeal case then? There's one in Imperial County I know where we represent the residents where the county has had, or Palm Springs, either Imperial County or Palm Springs, has had to go back and implement the future rent increases. I think Mr. Rodriguez is involved in the dispute over how much those should be. But those are the situations I'm aware of. I don't have any citations. I'm sorry for the Court. But are these Superior Court cases or is there a district court of appeal case in the picture here? We were at counsel in the Imperial County case at the beginning. I forget whether Mr. Lincoln in my office is handling that. I forget whether it went up to the court of appeal and they lost. I think it did in an unpublished opinion. And then when they came back down, we became involved in the issue of implementing the Kavanaugh adjustment, which is happening. Counsel, would you please file with the record in the next ten days a response to Judge Hall's question with the detail that would help us review those cases? Thank you, Your Honor. I'll do that. Now, I know you're going to get to answer my question, but your time is getting a little short, so go ahead. I was going to turn to the writ issue because, obviously, the writ doesn't suffer from being unright. It doesn't suffer from being barred by the statute of limitations. And there is a diversity jurisdiction allegation made in the complaint, so theoretically the district court could retain jurisdiction over the state writ claim, notwithstanding the flaws in the constitutional claims. And the question is, what would be the ground for not hearing the writ claim? And the answer would be younger abstention. I believe that younger abstention has gone through several phases in the Ninth Circuit. I know that I was involved in the Montclair decision in front of at least one member of this panel. At that time, the Green case was being determined en banc, and based on the decision in the Green case, this Court held that the re-appendency of another state action, which I think sought debt relief for unconstitutionality of a rent contortance, wasn't direct interference, which implicated younger. I believe Gilbertson squarely addressed that issue and overruled it and said that where you have a pending state action which seeks debt relief, that an ordinance is unconstitutional, unenforceable, which is what they're saying, that what they're doing here is they're seeking the same kind of debt relief, that that is the type of interference which implicates younger concerns. I think all the other prongs of younger are met. I know in the reply brief they said, well, the state action was filed after the federal action. Well, yes, it was filed three days later, but in the Hicks-Miranda case and in a subsequent case by the Ninth Circuit, they held that as long as the state action is filed before any substantive rulings in the federal court, that younger still is implicated. The Mission Oaks case is directly on point. The type of state interest at issue here is the type that implicates younger concerns. You have a state action which is identical to this action. It has proceeded to judgment, is on appeal. What was the nature of the judgment? Was there a trial? Was a motion for summary judgment granted? What was it? There was bifurcation. There was a trial on the writ and there was a hearing and the receipt of the administrator record and evidence. The trial court found at the writ hearing that the one-year leases, notwithstanding their titles, were in effect month-to-month leases subject to the ordinance. You know, I'd have to go back and see. He ruled on grounds different than I urged, and I really forget the technical aspects of his ruling, but I guess basically it was a denial of a writ. Perhaps we could ask counsel for both sides to jointly notify us within 10 days as to the status of that state litigation and perhaps provide us with copies of the judgment, if there is already a judgment. There is, Your Honor. So the writ was denied. Subsequently, the county brought a motion for judgment on the pleadings as to the constitutional claims, and my firm recollection is that the court granted the motion for judgment on the pleadings on the grounds that the constitutional claims were all time-barred facial claims. Judgment was entered thereafter, and a notice of appeal was filed within the last month or so. That's the status of the state case. So I guess in summary, I think that these are all time-barred facial claims, at least the constitutional claims, and even if they were, as implied to be, unright. And as to the writ, I think younger abstention clearly applies. Thank you, Mr. Heer. Thank you very much. Mr. Bradford, you have some reserve time. Thank you, Your Honor. The Rodriguez declaration is at excerpts of the record 171 to 245. Under Penn Central, we can state, and as applied claim, believe that this case comes before the court in a posture that was similar to what occurred in Laval and in Lingle, where we were pursuing substantially advanced claims up until the point that Lingle was decided and effectively declared that those were no longer viable theories, but that Penn Central and substantive due process were. Similarly, in Yee and Laval, the litigants were pursuing physical taking theories when the Supreme Court held that those theories were not available. And in both instances, this Court and the Supreme Court saw fit to allow the litigant to move forward under a different regulatory taking theory. Here, that would be Penn Central, and that would be the substantive due process under the rearticulation of that standard in Lingle. We believe the appropriate course is for this to be remanded to the district court so that we can flesh out those claims in full, and these procedural defenses of ripeness and standing and so forth can be asserted with respect to the post-Lingle claims, which we've really not had a full opportunity to plead because of the change in law that Lingle represented after the district court ruled. We believe, similarly, any significance of the state court action would best be addressed in that context. I would note that because the state court action is on appeal, it is not entitled to any res judicata or collateral estoppel effect under California law, and it remains to be seen what the resolution of those issues are. But Penn Central is an as-applied claim. If you consider a statute that says you can have 60% of a CPI increase in your rent every year, and that statute starts you out at a rent that's comparable to market, there may be no injury, nor is it necessarily apparent if prices in the market don't rise that you will suffer an injury. But if that law then becomes immune from any constitutional challenge after two years, that law could remain in effect in perpetuity to the point where the market rent could be $10,000 a space, and we're still only in a position to charge $600 a space because of that ever-growing disparity. The circumstances of the effect of a law of this nature evolve and change as market dynamics change and as other legislation is or has in the past. And, therefore, an as-applied challenge which looks at these factors on an ad hoc basis is an as-applied challenge that's constantly available to a litigant, although its damages are limited by litigation. You've heard Mr. Heeter's argument that you elected to pursue the remedy under the existing ordinance. With respect to the state court action or with respect to the nine spaces? With respect to the nine spaces. That's correct, Your Honor. That's what led to... So, in effect, doesn't that undercut your as-applied theory? No, I think... You weren't relying on an as-applied at that point. You were relying essentially on a facial challenge, which was too late. To the contrary, the determination by the rent board and then by the county itself also gives rise to an as-applied challenge because, as Your Honor is aware, under Williamson in the first prong, there needs to be some decision by an initial decision maker applying an ordinance in order to ripen the claim. And as this court recognized, I believe, both in Laval and Carson Harbor, that an as-applied claim doesn't become ripe until there is some decision applying the law. So the as-applied claim could not be brought before there had been a decision applying the law. That decision ripened and, therefore, began the accrual of a limitation period for the as-applied claim, which is triggered by the initial decision by the city applying that law. Similarly, the procedural due process claim could not have been brought before the administrative hearings were held and procedural due process was violated. That claim also ripened and only became viable after that hearing was complete. A note on a separate matter that, based on authority, we identified in Note 7 of our brief, you don't need an en banc consideration to reconsider decisions in light of an intervening Supreme Court decision, as is the case with Paul Lozano. And there's a Ninth Circuit precedent to that effect that we cite at Note 7. I also note that Lingle's- We knew that. I'm sorry? We knew that. Thank you. If we accept your argument. But his argument, if Carson was not effectively overruled, then we would have to go en banc. I would also note that there, to my knowledge, has never been a statute of limitation defense successfully sustained to an as-applied challenge. It's a limitation on the damages at most, but can't preclude the action. That Younger is inapplicable here, both because this action was filed first, but second because the only reason that state court action was filed, and it was articulated this way, was as a protective measure. If this court found it lacked jurisdiction because of ripeness, we did not want to blow the statute of limitations, and therefore we filed an action and asked that it be stayed. And, in fact, it was stayed throughout the entirety of much of the district court proceedings. And as a consequence, there is no basis for Younger abstention, nor is there an unclear issue of state law that needs to be resolved that would give rise to Pullman abstention. Thank you, counsel. Your time has expired. Thank you again. We will notify counsel with respect to submission. It probably will be deferred until we receive the supplemental information that will be requested during the oral argument. The court will adjourn.
judges: Hall, O'scannlain, Callahan